ARCHY L. VAN WINKLE

*v.*

CHARLES F. VAN WINKLE.

*Opinion filed December 16, 1902.*

PARTNERSHIP—*when partnership is not proved.* An alleged partnership in a bucket-shop business, between the founder thereof on the one side and his father and brother on the other, is not established under evidence that the business was incorporated (nominally, at least,) by the founder, and that neither the father nor the brother appeared as stockholders, nominally or otherwise, and that after the alleged agreement neither of them examined the books, assumed control or assisted in the business or furnished labor, capital or skill, and after real estate was bought with the proceeds of the business did not for several years claim any interest in the rents and profits therefrom or require any accounting.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

RITSHER, MONTGOMERY & HART, for appellant.

EDWARD H. MORRIS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

During the years 1893, 1894 and 1895 the appellee, Charles F. VanWinkle, purchased a large number of pieces of real estate in Cook county, some of which were improved by residences and flat buildings, and others were in cultivation or vacant. The conveyances of said property were made to Hattie Owen Barnes, subject to certain existing encumbrances, and she held title as trustee. Afterward the appellee married said trustee, and in the fall of 1898 she was about to institute divorce proceedings against him. In view of that fact they agreed upon a division of the property, and under the agreement she received one parcel, and conveyed the rest, by his instruction, to Gertrude A. Shute, subject to encum-

brances then upon the property. 'This was done by means of four deeds executed by the said Hattie Owen Van-Winkle to the said Gertrude A. Shute, dated October 14, 1898, which were delivered to appellee, and he filed them for record on October 20, 1898. At the time of this transaction Gertrude A. Shute gave a power of attorney to appellee authorizing him to sign any appeal bond, enter into any recognizance, execute and deliver any warranty deed, mortgage or trust deed, or any other conveyance, to any and all of her real estate in Cook county, as her attorney in fact. Appellee managed the property both before and after the conveyances to Gertrude A. Shute. The divorce proceeding was instituted and there was a decree of divorce. On January 11, 1899, Gertrude A. Shute executed four deeds to appellee, conveying the property to him. These deeds were delivered to appellee, but he retained them in his possession and did not put them on record. On May 1, 1901, Gertrude A. Shute made a deed to appellant, Archy L. VanWinkle, of two lots included in the property which had been deeded to said Hattie O. Barnes, and she also executed a trust deed conveying the remainder of the property to the Equitable Trust Company to secure a note for the sum of $20,000, payable to the order of herself, and this note became the property of the appellant. The trust deed was recorded May 2, 1901, and appellee learned of it on May 6, 1901, whereupon he filed his deeds for record and filed the bill in this case against appellant and Gertrude A. Shute, the Equitable Trust Company, and others, asking the court to declare the trust deed not a lien on the property, and to order appellant and his wife to transfer said two lots conveyed to him by Gertrude A. Shute, and to cancel a trust deed to secure $1200, which appellant had placed on the two lots after they were conveyed to him. The Equitable Trust Company answered, disclaiming any interest except as trustee, and professing a readiness to execute any lawful trust imposed upon it by the trust deed. Ap-

pellant and Gertrude A. Shute answered, controverting appellee's claim, and appellant filed his cross-bill, claiming that he and his father, David VanWinkle, were partners with appellee in business; that the real estate in question was purchased with the proceeds of that business, and that appellant was entitled to one-third of the real estate, appellee to one-third, and their father, David VanWinkle, to the remaining one-third. The appellee answered the cross-bill, denying the material allegations, and averring that the business mentioned in the cross-bill was running, conducting and controlling a bucket-shop, in violation of the law. There was a hearing, and there was no pretense that any money was paid on account of the $20,000 trust deed. It was admitted that said trust deed was made without consideration, to give the appellant an advantage in enforcing what he claimed to be his rights in the property. The disputed question of fact was whether the alleged partnership existed. The court found that the property, except the two lots, was the property of appellee, and dismissed the cross-bill for want of equity. The court gave appellant the two lots conveyed to him by Gertrude A. Shute, and held the trust deed thereon, executed by him, to be valid. The decree required the Equitable Trust Company to release the trust deed executed to it and appellant to cancel and surrender up the note. Appellant prosecuted this appeal.

The first question to be settled is whether there was a partnership between appellant, the appellee and their father, David VanWinkle. If it is determined that there was not, the other question discussed by counsel, as to whether the parties would be deprived of the aid of a court of equity on the ground that the source from which the purchase money came is illegal, is not involved.

We are of the opinion that the alleged partnership was not proved. The evidence was to the effect that David VanWinkle and his son, the appellant, prior to

1890 had been engaged ·for a number of years in what they called the grain, provision and commission business at the Union Stock Yards, where they took orders and sent them to the board of trade or bucket-shops. For a couple of years prior to 1890 the appellee had been in California. Upon his return to Chicago in the summer of that year he joined with his father and brother in this business at the stock yards, and continued there until the latter part of June, 1891, when the two brothers had a quarrel and personal encounter, and appellee left. The cause of the difficulty was a charge that appellee had taken more money from the firm than he was entitled to, and it is claimed that he had taken about $600 more than was due him. In the fall of 1891 appellee commenced running a bucket-shop in the business center of Chicago. The first that appellant and his father knew of this business down town was in November, 1892, and they do not claim to have had anything to do with it until the spring of 1893. They testified that at that time appellee said he had a good business started down town and had a good start, but a wave of the market would knock him off his feet, and that the money he took out of the business at the stock yards was what started him in business down town. They testified that he proposed that appellant and his father should go in with him and take an interest in the business, and agree to furnish money in the case of any emergency, so as to keep the business going, and that they agreed to the proposal. Appellee denied any such proposition or agreement, but admitted that he talked to them about the business and his prospects, from time to time. After the alleged agreement neither the appellant nor his father ever put any money or property into the business and had nothing to do with managing or running it. Apparently they were not connected with it in any way. The business was run under the names of Charles F. VanWinkle & Co., Barnes & Co., Lansing & Co., and other names on the doors of the sev-

eral rooms.  These firms were apparently separate con-
cerns, but were all, in fact, the same, and were run by
appellee and his clerks.  C. F. VanWinkle & Co. was,
nominally at least, in the form of a corporation, under
articles of incorporation, and there was probably no
*bona fide* stock as a matter of fact, but neither the appel-
lant nor his father appears as a stockholder, nominally
or otherwise.  The evidence was that Barnes & Co. ap-
peared as the "bear" house, C. F. VanWinkle & Co. as
the "bull" house, and Lansing & Co. as the scalpers, in
the gambling business carried on.  The business of the
appellant and his father at the stock yards was under
the name of David VanWinkle, but their account at the
bucket-shop was kept in the name of Booth & Co.  They
sent orders to the bucket-shop, and the proceeds of the
transactions were divided between them and the bucket-
shop concern.  The bucket-shop business was continued
for several years after the alleged agreement, and neither
the appellant nor his father had anything to do with it.
They never examined the books or accounts, never as-
sumed any control, and neither furnished capital, labor
or skill for the enterprise.  They never looked after this
property, although they say it was bought with the pro-
ceeds of the business and with their knowledge.  They
never claimed any interest in the rents or income or
required any accounting concerning it.  The first claim
made was when the trust deed was executed to the Equi-
table Trust Company, as appellant says to put him in a
better position to enforce his claim.  There was not suf-
ficient proof of the partnership.  It was not contended
that the trust deed represented anything, and it was not
executed in the prosecution of a legal business or in fur-
therance of it, and we think the conclusion of the court
is right.

The decree of the circuit court is affirmed.

*Decree affirmed.*